Filed 8/25/15  P. v. Janney CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAUL WERNER JANNEY,<br><br>    Defendant and Appellant. | B260499<br><br>(Los Angeles County<br>Super. Ct. No. MA054035) |

APPEAL from an order of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Appellant Paul Werner Janney appeals following revocation of probation previously granted after his plea of no contest to second degree robbery. (Pen. Code, § 211.) The court ordered lifted the suspension of execution of appellant's previously imposed prison sentence of five years. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

1. *The Present Offense.*

The record reflects that on September 11, 2011, appellant and his wife Laurel Janney (Laurel) were in their Lancaster home when appellant threatened to kill Laurel if she did not give him money. She had $200 but did not want to give him money because he was a drug addict. In an effort to take money from Laurel, appellant pulled her neck back and put his hand over her mouth. He also grabbed her face while trying to muffle her screams, and he scratched her left cheek and the right portion of her chin. Appellant robbed Laurel of $20, then fled. Laurel immediately called 911. Appellant ran back inside the residence and said, "Oh, bitch. I'm going to get you. If you don't give me that money, I will bury you in the dirt."

The information filed on October 4, 2011, alleged that on or about September 11, 2011, appellant committed second degree robbery, criminal threats, and corporal injury to a spouse (counts 1 through 3, respectively). On October 13, 2011 (and at all times below mentioned), appellant was represented by counsel and, on October 13, 2011, appellant pled not guilty to the charges. On December 12, 2011, the People announced they were unable to proceed. The court, on appellant's motion, dismissed the case pursuant to Penal Code section 1382. The information was refiled that day and appellant pled not guilty.

On February 7, 2012, appellant indicated he would enter a negotiated plea. The court advised appellant about the nature and consequences of his plea. During the advisement, the court stated, "If you ever violate probation on this case, you could go to prison for up to five years," parole usually lasted up to three years, and appellant could return to prison for up to one year for each parole violation. The court asked appellant, "Do you understand that?" and appellant replied yes. After appellant waived his

2

constitutional rights, he pled no contest to second degree robbery (count 1) as previously indicated.

The court sentenced appellant to prison for the five-year upper term, suspended execution of sentence, and placed appellant on formal felony probation for five years. As conditions of probation, the court told appellant: "[d]o not . . . use . . . any deadly or dangerous weapons" and "[d]o not . . . threaten to use . . . violence against any person." The court awarded appellant presentence credit and imposed various fines and fees. Appellant accepted the probation conditions.

The following later occurred: "[The Court:] . . . I need you to understand that you do have five years prison hanging over your head. Okay? You are walking on a tightrope now. And I hope you complete probation. But if you do violate probation in any meaningful way, . . . you are exposing yourself and [*sic*] probably will get the five years. [¶] Understood? [¶] The Defendant: Yes, sir. [¶] The Court: So you're going into this with your eyes wide open. Correct? [¶] The Defendant: Yes, sir." Pursuant to the People's motion, the court dismissed the remaining counts and allegations, subject to the continuing validity of the plea.

2. *Probation Revocation and Sentencing Proceedings.*

On July 16, 2014, the court summarily revoked appellant's probation. On October 9, 2014, the People filed a motion requesting formal revocation of appellant's probation. The motion indicated as follows. During appellant's probationary period, he committed against Christopher Jackson the crimes of criminal threats and assault with a deadly weapon, i.e., a shovel. A new case (case No. MA063471) had been filed based on the above offenses. However, instead of prosecuting appellant in the new case, the People wanted the court to revoke formally appellant's probation in the present case.

At the November 4, 2014 probation revocation hearing, Jackson testified as follows. On July 1, 2014, Jackson lived in an apartment in Lancaster. Appellant was the apartment building maintenance man. (Jackson gave conflicting testimony about whether appellant was the property manager.) On July 1, 2014, Jackson and appellant were arguing at the apartment building because Jackson had been late paying rent. Appellant,

3

using racial epithets, invited Jackson to fight. Appellant retreated into a garage. Jackson approached the front of the garage. (Jackson gave conflicting testimony about whether he entered the garage.) Appellant picked up a shovel and began aggressively walking towards Jackson. Jackson testified appellant was "about to swing on me."

The following later occurred: "[The Prosecutor:] Q Did [appellant] ever threaten you about your safety staying at that location, if you didn't pay your rent? [¶] [Jackson:] A Yes, sir." Jackson testified, "[appellant] said – in exact words, I wouldn't be safe there, until I paid Angelo [Gutierrez] rent. I wouldn't be able to spend the night there or sleep there safely, until I paid the rent to the landlord." Jackson called the police.

Angelo Gutierrez testified as follows. Gutierrez owned the apartment building. Jackson and appellant were tenants, and appellant was Gutierrez's employee. Gutierrez opined at trial that Jackson was an untruthful, manipulative, and very violent person. Jackson was constantly drunk or under the influence of drugs.

At the conclusion of the hearing, the court stated, "the court . . . finds the defendant has violated his probation on two grounds: one, the court finds that he used a dangerous and deadly weapon, in particular, a shovel, against Christopher Jackson, on July 1st, 2014, in a threatening manner; and two, he threatened to use violence against Christopher Jackson on 7/11/2014 [*sic*][1]." At the November 20, 2014 probation and sentencing hearing, the court indicated the probation report recommended imposition of sentence. The court lifted the suspension of execution of appellant's previously imposed five-year prison sentence.

---

**1** There was evidence presented at the probation revocation hearing that appellant threatened to use violence against Jackson on July 1, 2014, but not July 11, 2014. At the November 20, 2014 probation and sentencing hearing, the court stated it already had found appellant violated probation based on appellant's using a dangerous or deadly weapon, a shovel, against Jackson on "July 1st, 2014, and that, two, he threatened to use violence against Christopher Jackson *on that same date*." (Italics added.) We assume that at the November 4, 2014 probation revocation hearing, the court found appellant threatened to use violence against Jackson on July 1, 2014, not July 11, 2014.

## *CONTENTIONS*

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed May 19, 2015, the clerk of this court advised appellant to submit within 30 days any contentions, grounds of appeal, or arguments he wished this court to consider.

In a supplemental letter filed June 10, 2015, appellant argued as follows. Jackson's testimony at the probation revocation hearing was fabricated and there was insufficient evidence presented at that hearing. Reinstatement of probation was appropriate. Appellant was "not trying (so much) to prove [his innocence]," but it was error to find appellant in violation of probation or send him to prison without appellant's commission of a new crime. Everyone was shocked at the outcome of the present case except for the prosecutor and sentencing court.

We conclude appellant's arguments fail to demonstrate error.

## *REVIEW ON APPEAL*

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

*DISPOSITION*

The order lifting the suspension of execution of appellant's previously imposed prison sentence of five years is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, Acting P. J.

We concur:

ALDRICH, J.

JONES, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.